Filed 3/7/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DR. LEEVIL, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WESTLAKE HEALTH CARE CENTER,<br><br>    Defendant and Appellant. | 2d Civil No. B266931<br>(Super. Ct. No. 56-2015-00465793-CU-UD-VTA)<br>(Ventura County) |

A purchaser at a foreclosure sale seeks to evict the occupant of the property as soon as possible. It serves a notice to quit after the sale but before recording title to the property. Here we reject the occupant's claim that the notice to quit is premature, and hold that Code of Civil Procedure section 1161a[1] does not require that title be recorded before the notice to quit is served. We affirm.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

BACKGROUND

Jeoung Hie Lee and Il Hie Lee own Westlake Village Property, L.P. (Westlake Village), a business entity that formerly owned a skilled nursing facility. In 2002, Westlake Village leased the facility to Westlake Health Care Center (Westlake Health), a corporation also owned and controlled by the Lees. The lease had an automatic subordination clause and a permissible subordination clause with a nondisturbance provision. It was for a 20-year term.

Six years into the lease, Westlake Village took out a five-year loan from TomatoBank, N.A., secured by a deed of trust on the nursing facility. When Westlake Village defaulted on the loan and filed for bankruptcy, TomatoBank sold the loan to Dr. Leevil, LLC (Leevil). Leevil obtained relief from the bankruptcy stay, instituted a nonjudicial foreclosure, and purchased the nursing facility at a trustee's sale.

The day after it purchased the facility, Leevil served Westlake Health with a notice to quit. Leevil recorded title to the facility five days later. Westlake Health did not vacate the facility, and Leevil sued for unlawful detainer. Westlake Health's answer alleged that its lease was senior to the deed of trust and that the notice to quit was invalid because it was served before title was recorded. At a bifurcated trial, the court found that the lease was subordinate to the deed of trust and was extinguished by the trustee's sale. The court also found that the notice to quit was valid.

Westlake Health agreed to surrender possession of the facility and pay damages before the second phase of trial began. The parties stipulated that the judgment would "not affect any party's appellate rights." The sheriff evicted Westlake

2

Health and Leevil leased the facility to another skilled nursing provider.

After Westlake Health filed its opening brief, Leevil filed a motion to dismiss the appeal as moot. We deferred ruling on the motion until after oral argument. While this case was under submission, our Supreme Court ordered publication of *U.S. Financial, L.P. v. McLitus* (2016) 6 Cal.App.5th Supp. 1 (*McLitus*). In *McLitus*, the Appellate Division of the San Diego County Superior Court held that a property owner's service of a notice to quit before it perfects title to the property renders invalid any subsequent unlawful detainer proceeding. (*Id.* at pp. Supp. 3-5.) We vacated submission and ordered supplemental briefing.

DISCUSSION

*The Motion to Dismiss*

Leevil asks us to dismiss the appeal as moot because Westlake Health is no longer in possession of the facility and cannot operate it without a license. We deny this request.

Westlake Health reserved the right to appeal in the stipulation, and correctly argues that this court can restore its possession of the facility. (*Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 467-468.) Moreover, Westlake Health could apply to renew its license if possession were restored. The appeal is not moot.

*The Opportunity to Present Argument and Evidence*

Westlake Health complains that it was denied the opportunity to present extrinsic evidence concerning the intent and purpose behind the lease's subordination clauses. We are not persuaded.

3

During the proceedings below, Westlake Health made offers of proof as to the testimony that would be provided: (1) testimony from Ms. Lee, who "would simply say that [the lease] was negotiated on behalf of, yes, her as the principal of the lessee, as well as the principal of the landlord" and that "[o]bviously the lender was not a party to the contract at that time"; and (2) testimony from the attorney who drafted the lease to explain why the subordination and nondisturbance clauses were included. The court then indicated how it intended to rule, and asked Westlake Health whether it intended to submit additional evidence. Westlake Health stated that it did not.

In the absence of disputed facts, interpretation of lease provisions presents a question of law for the court to decide. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 396 (*City of Hope*).) Westlake Health has made no showing that the trial court failed to consider any relevant facts. There was thus no need for it to consider extrinsic evidence.

*The Lease Provisions*

Westlake Health claims that the trial court erred in finding the lease subordinate to the deed of trust. We disagree.

A lease made before the execution of a deed of trust survives a subsequent foreclosure and requires that the purchaser take the property subject to the lease. (*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1478.) A tenant can, however, agree to subordinate its lease to a future deed of trust. (*Id.* at pp. 1478-1479.) This is usually done through an automatic subordination clause, which provides that the lease will be subordinate to encumbrances on the property that later attach. (*Id.* at p. 1479.)

4

It can also be done through a permissible subordination clause, which permits the deed holder to compel the lessee to subordinate its interest. (*Miscione v. Barton Development Co.* (1997) 52 Cal.App.4th 1320, 1328 (*Miscione*).) If the lease contains both a permissible subordination clause and a nondisturbance provision, the lessee can compel the new owner to abide by the terms of the lease. (*Ibid.*)

Westlake Health's lease contains both an automatic subordination clause[2] and a permissible subordination clause with a nondisturbance provision.[3] There is no evidence that TomatoBank, as the deed holder, ever invoked the permissible subordination clause. It had no need to; its position was fixed by the automatic subordination clause. Under that clause, Westlake

---

[2] The automatic subordination clause is at paragraph 21.6 of the lease: "This Lease is and shall be subordinated to all existing and future liens and encumbrances against the Premises."

[3] The permissible subordination clause with a nondisturbance provision is at paragraph 19: "Landlord shall have the right to subordinate this Lease to any deed of trust or mortgage encumbering the Premises . . . . Tenant shall cooperate with Landlord and any lender which is acquiring a security interest in the Premises or the Lease. Tenant shall execute such further documents and assurances as such lender may require, provided that Tenant's obligations under this Lease shall not be increased in any material way, and Tenant shall not be deprived of its rights under this Lease. Tenant's right to quiet possession of the Premises during the Term shall not be disturbed if Tenant pays the rent and performs all of Tenant's obligations under this Lease and is not otherwise in default."

Health's lease was automatically subordinate to TomatoBank's deed of trust. (*Miscione, supra*, 52 Cal.App.4th at p. 1328.) The trustee's sale extinguished the lease. (*Dover Mobile Estates v. Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498-1499.)

The permissible subordination clause with its nondisturbance provision does not compel a contrary finding. Westlake Health interprets the clause as prohibiting termination of the lease so long as it is not in default. But TomatoBank never invoked the permissible subordination clause. Moreover, Westlake Health's interpretation fails to reconcile the lease's automatic subordination clause with the permissible subordination clause. Westlake Health argued below that the "ambiguities in the contract" present "an issue that may require some factual interpretation" to be decided by a jury. But interpretation of the lease's provisions presents a legal question for the court. (*Miscione, supra*, 52 Cal.App.4th at p. 1325.) And contract ambiguities are construed against the drafter. (*City of Hope, supra*, 43 Cal.4th at pp. 397-398; see also Civ. Code, § 1654.) The trial court correctly construed the subordination clauses against the drafter, i.e., Westlake Health.[4]

### *The Notice to Quit*

Relying on *McLitus*, Westlake Health contends that the trial court should have granted judgment on the pleadings because Leevil did not perfect title before it served the notice to quit. It claims the notice to quit was premature and nullified the

---

[4] Given our conclusion, there is no need to consider Westlake Health's claim that the trial court erred in finding that Leevil was not bound by the nondisturbance clause as a third-party beneficiary. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)

unlawful detainer proceedings that followed.  We are not persuaded by the reasoning of *McLitus* and reject this contention.

*McLitus* relies on the language of section 1161a, subdivision (b)(3), which provides that "a person who holds over and continues in possession of . . . real property after a three-day written notice to quit the property has been served . . . may be removed therefrom . . . [w]here the property has been sold in accordance with [s]ection 2924 of the Civil Code . . . and the title under the sale has been duly perfected."  The statute does not require that title be perfected (i.e., that the trustee's deed be recorded) before service of the three-day notice.  It requires that title be perfected before a tenant "may be removed" from the property.

Westlake Health concedes that it held over in possession after the three-day notice to quit was served.  It does not contend that the trustee's sale failed to comply with section 2924 of the Civil Code, or that Leevil failed to perfect title before Westlake Health was removed from the property.  Section 1161a's requirements were strictly complied with.

To conclude otherwise, this court would have to impose an additional requirement onto the statutorily required notice to quit, i.e., perfection of title *before* service.  *McLitus* held that unless the trustee's deed was recorded prior to service of the notice to quit, the tenant would be prevented "from effectively verifying the identity of the alleged purchaser of a property as a search of recorded documents would prove futile." (*McLitus*, *supra*, 6 Cal.App.5th at p. Supp. 4.)  But here, if Westlake Health were concerned with verifying Leevil as the purchaser of the property, it had more than five weeks between service of the notice to quit and filing of the unlawful detainer complaint to do

7

so.  And, in any event, Westlake Health was free to challenge Leevil's claimed ownership in court.  (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1010 [title can be litigated in a section 1161a unlawful detainer action].)

None of the cases cited in *McLitus* support the requirement that title be perfected before service of the notice to quit:  *Baugh v. Consumers Associates, Limited* (1966) 241 Cal.App.2d 672, 674-675 and *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697 (*Bevill*), consider the required contents of a notice to quit served in a landlord-tenant dispute, not one served after a trustee's sale.  The contents of the two notices are different.  (Compare § 1161, subd. (2) with § 1161a, subd. (b)(3).)  *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540-541, discusses when a controversy is ripe in a declaratory judgment action, not the type of proceeding here.  *Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, 841, describes the steps required to perfect title, an issue not raised in this case.  *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268, 275 (*Garfinkle*) and *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 480, suggest, in dicta, that the purchaser of property at a trustee's sale "is entitled to bring an unlawful detainer action" (*Garfinkle*, at p. 275) after recording the trustee's deed:  precisely what happened here.

The *McLitus* court read *Bevill*'s statement that a three-day notice "is a prerequisite to an unlawful detainer action" (*Bevill*, *supra*, 27 Cal.App.4th at p. 697) as holding that service of the three-day notice marks the start of an unlawful detainer action.  But one does not "bring an unlawful detainer action" by serving a notice to quit.

A trial court acquires jurisdiction over the parties when the plaintiff serves the defendant with the unlawful detainer summons and complaint. (*Borsuk v. Appellate Division of Superior Court* (2015) 242 Cal.App.4th 607, 612.) Service of the notice to quit is an element of the action that must be alleged in the complaint and proven at trial (*id.* at pp. 612-613), but it does not give the court jurisdiction over the parties (*id.* at pp. 616-617). Filing of the complaint is the beginning of an unlawful detainer action. Because title was perfected before the complaint was filed, the unlawful detainer proceedings were valid. To conclude otherwise, we would have to rewrite section 1161a, subdivision (b)(3) to add the requirement that title be perfected before the notice to quit is served. That, however, is a legislative function.

## DISPOSITION

The motion to dismiss the appeal is denied. The judgment is affirmed. Leevil is awarded costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:



YEGAN, Acting P. J.



PERREN, J.



9

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Enenstein Ribakoff LaViña & Pham, Teri T. Pham and Courtney M. Havens, for Defendant and Appellant.

Law Offices of Ronald Richards & Associates, Ronald N. Richards, Nicholas Bravo; Law Offices of Geoffrey Long and Geoffrey S. Long, for Plaintiff and Respondent.