# IN THE SUPREME COURT OF CALIFORNIA

DR. LEEVIL, LLC,

Plaintiff and Respondent,

v.

WESTLAKE HEALTH CARE CENTER,

Defendant and Appellant.

S241324

Second Appellate District, Division Six

B266931

Ventura County Superior Court

00465793-CU-UD-VTA

December 17, 2018

Justice Chin authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Peña[*] concurred.

---

[*]    Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

DR. LEEVIL, LLC v. WESTLAKE HEALTH CARE CENTER

S241324

Opinion of the Court by Chin, J.

In this case, we decide a procedural question related to the timing of the notice that must precede an unlawful detainer action, where the action is not brought by a landlord but rather by a new owner that has acquired title to the property under a power of sale contained in a deed of trust. The question we decide is whether perfection of title, which includes recording the trustee's deed, is necessary before the new owner serves a three-day written notice to quit on the possessor of the property or whether perfection of title need only precede the filing of the unlawful detainer action. We conclude that the new owner must perfect title before serving the three-day written notice to quit. Because the Court of Appeal reached a different conclusion, we reverse the judgment of the Court of Appeal.

## FACTS

Westlake Village Property, L.P. (Westlake Village) owned property in Thousand Oaks that it leased in 2002 to defendant Westlake Health Care Center (Westlake Health) so the latter could operate a skilled nursing facility on the property. Six years later, Westlake Village obtained a bank loan, executing a promissory note and a deed of trust on the property (the latter to secure the promissory note). After Westlake Village defaulted on the loan, the bank sold the promissory note and the deed of trust to Dr. Leevil, LLC (Dr. Leevil), plaintiff in this action. Dr. Leevil then instituted a nonjudicial foreclosure and bought

the property at a trustee's sale. The next day, Dr. Leevil served a three-day written notice to quit upon the property's tenant, Westlake Health, and five days after that, Dr. Leevil recorded title to the property. Westlake Health did not vacate the property, and Dr. Leevil initiated this unlawful detainer action 40 days after service of the written notice to quit.

Proceedings in the trial court ended in a judgment against Westlake Health, based on stipulated facts, with Westlake Health preserving its right to appeal various legal rulings of the court. On appeal, the Court of Appeal affirmed. (*Dr. Leevil, LLC v. Westlake Health Care Center* (2017) 9 Cal.App.5th 450.) Among other things, the Court of Appeal concluded that, under Code of Civil Procedure section 1161a, subdivision (b) (section 1161a(b)), an owner that acquires title to property under a power of sale contained in a deed of trust need *not* perfect title before it serves a three-day written notice to quit on the possessor of the property. Instead, the Court of Appeal concluded that the new owner may serve the notice to quit immediately after acquiring ownership, after which it may perfect title, so long as title is perfected before the new owner files an unlawful detainer action. (9 Cal.App.5th at pp. 455–457.) In reaching that conclusion, the Court of Appeal expressly disagreed with the Appellate Division of the San Diego County Superior Court, which addressed the same issue in *U.S. Financial, L.P. v. McLitus* (2016) 6 Cal.App.5th Supp. 1 (*McLitus*). (9 Cal.App.5th at p. 455.) Because Dr. Leevil perfected title before initiating this unlawful detainer action, although not before serving the notice to quit, the Court of Appeal concluded that the action complied with section 1161a(b). (9 Cal.App.5th at p. 457.)

Westlake Health petitioned for review, which we granted, limiting the issue to the section 1161a(b) issue described above.

## DISCUSSION

"Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose. [Citations.] We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject. [Citations.] If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources. [Citations.]" (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089–1090.)

Section 1161a(b) authorizes a summary proceeding to remove the possessor of real property in specified circumstances. It is structured to enumerate five "cases" in which its substantive provision applies. Specifically, section 1161a(b) opens with the phrase "[i]n any of the following cases," then it sets forth its substantive provision (authorizing an unlawful detainer action to remove "a person who holds over and continues in possession of . . . real property after a three-day written notice to quit the property has been served"), and then it enumerates five separate situations in which its substantive provision comes into play.[1] Thus, the substantive provision of

---

[1] Section 1161a(b) provides in full: "In any of the following cases, a person who holds over and continues in possession of a manufactured home, mobilehome, floating home, or real property after a three-day written notice to quit the property has been served upon the person, or if there is a subtenant in actual occupation of the premises, also upon such subtenant, as prescribed in Section 1162, may be removed therefrom as prescribed in this chapter: [¶] (1) Where the property has been

section 1161a(b) has no operative effect unless one of the five enumerated situations (what the statute calls "cases") is present. Put another way, section 1161a(b) contemplates that a property owner seeking to avail itself of the statute's remedy will begin by looking at the five enumerated "cases," considering whether the conditions of any of them are satisfied. Only when one of the cases is satisfied may the substantive provision of the statute be invoked.

Section 1161a(b)(3) is one of those "cases," and it is the only provision on which Dr. Leevil relies. Therefore, Dr. Leevil was not entitled to the remedy provided by the substantive provision of section 1161a(b) unless it first satisfied the conditions of section 1161a(b)(3). Section 1161a(b)(3) describes the following case: "Where the property [(A)] has been sold in

_____

sold pursuant to a writ of execution against such person, or a person under whom such person claims, and the title under the sale has been duly perfected. [¶] (2) Where the property has been sold pursuant to a writ of sale, upon the foreclosure by proceedings taken as prescribed in this code of a mortgage, or under an express power of sale contained therein, executed by such person, or a person under whom such person claims, and the title under the foreclosure has been duly perfected. [¶] (3) Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected. [¶] (4) Where the property has been sold by such person, or a person under whom such person claims, and the title under the sale has been duly perfected. [¶] (5) Where the property has been sold in accordance with Section 18037.5 of the Health and Safety Code under the default provisions of a conditional sale contract or security agreement executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected."

accordance with Section 2924 of the Civil Code, [(B)] under a power of sale contained in a deed of trust executed by [the holdover possessor], or a person under whom such person claims, *and* [(C)] the title under the sale has been duly perfected." (Italics added.) There are two things to notice about the language of section 1161a(b)(3). First, the provision is in the past tense ("has been sold" and "has been duly perfected"), suggesting completion. By contrast, the substantive provision of section 1161a(b) uses the present tense ("holds over and continues" and "may be removed"). These choices of verb tense strongly support the conclusion that section 1161a(b)(3), when it is relied upon by a plaintiff, enumerates conditions precedent that the plaintiff must satisfy before invoking the substantive provision of section 1161a(b) — that is, before serving a notice to quit. (See *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 ["In construing statutes, the use of verb tense by the Legislature is considered significant."].)

Second, the sale of the property in question is only one of three distinct conditions set forth in section 1161a(b)(3), and the use of the conjunctive word "and" to connect the three conditions can only mean that all three conditions must be satisfied. In other words, all three conditions of section 1161a(b)(3), including perfection of title, were prerequisites to Dr. Leevil having any right to the remedy section 1161a(b) affords. And in this context, perfection of title requires that the instrument of conveyance (the trustee's deed) be recorded pursuant to Government Code section 27280. As the Court of Appeal explained in *Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, "[t]itle is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt[]

5

[citation], *which includes good record title* [citation], but is not limited to good record title, as between the parties to the transaction. . . . The court in an unlawful detainer [action] . . . has jurisdiction to determine the validity of such defenses." (*Id.* at p. 841, italics added.) Because one of the conditions set forth in section 1161a(b)(3) is that "title under the sale has been duly perfected," Dr. Leevil was not entitled to a section 1161a(b) remedy until it first perfected title, which required, among other things, that the instrument of sale (the trustee's deed) be recorded. That being so, the most natural reading of the statute required Dr. Leevil to perfect title before invoking section 1161a(b) — but it is undisputed that Dr. Leevil served the three-day written notice to quit before it perfected title to the property. Dr. Leevil, therefore, took the first step in the removal process authorized by section 1161a(b) before satisfying all of the prerequisite conditions.

"It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings. [Citation.] The statutory requirements in such proceedings ' "must be followed strictly . . . ." ' " (*WDT–Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526; see *Underwood v. Corsino* (2005) 133 Cal.App.4th 132, 135; *Cal–American Income Property Fund IV v. Ho* (1984) 161 Cal.App.3d 583, 585.) "The remedy of unlawful detainer is a summary proceeding to determine the right to possession of real property. Since it is purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute." (*Baugh v. Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 674.) Because Dr. Leevil served the three-day notice to quit before it perfected

title, it did not bring itself within the scope of section 1161a(b), as that provision is most naturally read, before taking the first step in the removal process that the statute authorizes. Its notice to quit was, therefore, premature and void, and its unlawful detainer action, improper.

The Court of Appeal rejected the foregoing reading of section 1161a(b) because it did not focus on the statute's structure. As noted, section 1161a(b) opens with the phrase "[i]n any of the following cases," and it enumerates five separate situations, one of which must be satisfied before the substantive provision of the statute has any operative effect. The Court of Appeal ignored that structure, instead construing the statute as if the opening phrase were omitted and as if the requirements of section 1161a(b)(3) merely qualified the words "may be removed." (§ 1161a(b).) Based on that reading, the Court of Appeal concluded that a holdover possessor of real property "may be removed" (§ 1161a(b)) only after section 1161a(b)(3) is satisfied, but the three-day written notice to quit may be served *before* section 1161a(b)(3) is satisfied, because the three-day notice does not, by itself, remove the property's possessor. (*Dr. Leevil, LLC v. Westlake Health Care Center*, *supra*, 9 Cal.App.5th at pp. 456–457.) In so concluding, the Court of Appeal failed to discern the most natural reading of section 1161a(b).

That reading, moreover, is confirmed by consideration of the broader context in which section 1161a(b) was enacted. (See, e.g., *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 ["When the [statutory] language is susceptible of more than one reasonable interpretation, . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy,

contemporaneous administrative construction, and the statutory scheme of which the statute is a part"].) The unlawful detainer action was created to provide property owners who sought to recover possession of their property with a relatively inexpensive and quick legal remedy, thus discouraging property owners from resorting to self-help methods. In 1917, however, this court decided *Francis v. West Virginia Oil Co.* (1917) 174 Cal. 168, holding that the unlawful detainer remedy was limited to landlord–tenant disputes, and therefore a new owner could not bring an unlawful detainer action against a former owner who refused to relinquish possession. In 1929, in apparent response to *Francis*, section 1161a was added to the Code of Civil Procedure, expanding the unlawful detainer remedy to bring within its scope actions by property owners who acquired ownership as a result of: (1) an execution against the former owner, (2) a foreclosure of a mortgage executed by the former owner, or (3) a power of sale clause in a deed of trust executed by the former owner. (Stats. 1929, ch. 393, § 1, p. 719; see *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*).) Since 1929, section 1161a has been expanded in several ways, but as to its general structure, it has not been substantively changed. Significantly, there is no indication, in the history of section 1161a or in the case law interpreting it, that the Legislature intended the unlawful detainer remedy that the statute affords to be available to a party that does not strictly satisfy all the conditions of one of the statute's "cases."

Dr. Leevil argues that the perfection of its title — which occurred six days after the sale — was retroactive to the original sale date under Civil Code section 2924h, subdivision (c) (section 2924h(c)). Section 2924h(c) governs the means by which payment can be made at a trustee's sale, and it expressly

permits the trustee to withhold the trustee's deed until the funds constituting the purchase price become available to the payee. It provides: "In the event the trustee accepts a check drawn by a credit union or a savings and loan association pursuant to this subdivision or a cash equivalent designated in the notice of sale, the trustee may withhold the issuance of the trustee's deed to the successful bidder . . . until funds become available to the payee or endorsee as a matter of right. [¶] For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and *shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale . . . .*" (§ 2924h(c), italics added.)

The purpose of section 2924h(c) is clear from its text. A bidder at a trustee's sale might present a check for the purchase price of the property, but whether the bank account on which the check is drawn contains sufficient funds to cover the amount of the check remains to be seen. Therefore, the trustee is authorized to withhold the deed until the check clears. But withholding the deed prevents the purchaser from recording the sale and perfecting its title. The subdivision, therefore, affords a 15-day period during which the deed may be recorded and the sale "deemed perfected" as of the original sale date. (§ 2924h(c).) That way, the original sale date may be memorialized even if the deed is withheld pending confirmation of the purchaser's payment of the purchase price.

Dr. Leevil argues that it recorded title just six days after the date of the sale, and therefore, under section 2924h(c), the sale is "deemed perfected" as of the original sale date. Hence, Dr. Leevil should be *deemed* to have perfected title for purposes

of section 1161a(b) before it served the three-day written notice to quit on Westlake Health.

The problem with this argument is that, under section 2924h(c), the sale is not "deemed perfected" on the original sale date *until* the deed is recorded.  Before the deed is recorded, the sale is neither "perfected" (§ 1161a(b)(3)) nor "deemed perfected" (§ 2924h(c)) — it is just a sale — and it was before the deed was recorded that Dr. Leevil served the three-day written notice at issue in this case.  Thus, *as of the time Dr. Leevil served the notice*, Dr. Leevil did not meet the conditions of section 1161a(b)(3), and therefore its notice was premature and void.  The fact that Dr. Leevil later met those conditions, and the fact that the conduct that satisfied those conditions was deemed to be retroactive, does not change the fact that Dr. Leevil was not in strict compliance with section 1161a(b) *when it took the first step* in the removal process that the statute authorizes.

Moreover, as the appellate division noted in *McLitus*, the apparent policy aims of the statute support an inference that the Legislature intended that a new owner of real property should perfect title before serving a three-day written notice to quit on the possessor of the property.  In cases where the possessor of the property is a tenant of the former owner, not the former owner itself, the tenant may not know whether the entity serving the notice to quit is a bona fide owner.  Thus, section 1161a(b)'s requirement that the new owner perfect title before serving a notice to quit protects the interests of such a tenant.  As the appellate division stated in *McLitus*:  "[Plaintiff's] interpretation . . . would suggest that a post-foreclosure plaintiff could routinely prematurely issue a three-day notice . . . , [a]nd . . . such a practice would practically prevent a defendant from effectively verifying the identity of the alleged purchaser

of a property[,] as a search of recorded documents would prove futile." (*McLitus, supra,* 6 Cal.App.5th at p. Supp. 4.)[2]

As the *McLitus* court explained, Dr. Leevil's statutory interpretation would put a tenant in a precarious position. A tenant would be forced to choose between vacating the property without assurance that title will ever actually be perfected or remaining in possession of the property and potentially incurring damages as a holdover tenant if title is, in fact, perfected. In the first scenario, if the successful bidder at the trustee's sale fails to pay the purchase price, the sale could be rescinded, in which case the tenant vacated the property unnecessarily. In the second scenario, the tenant could be liable for damages that exceed the rent specified in the tenant's lease. (See *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1069.) Our conclusion that a new owner must perfect title before serving a three-day written notice to quit eliminates these uncertainties by allowing the tenant to verify title during the three-day notice period. It thus effectuates the

---

[2] Dr. Leevil argues that the tenant here was a business entity that was closely related to the property's former owner, and therefore the tenant knew that Dr. Leevil was the bona fide owner. That may be so, but we must interpret section 1161a(b) considering every situation in which the statute might apply, including the situation in which the tenant has no such insider knowledge. Moreover, "the code requirements [governing unlawful detainer] must be *followed strictly* . . . ." (*Cal–American Income Property Fund IV v. Ho, supra,* 161 Cal.App.3d at p. 585, italics added.) The phrase "followed strictly" does not suggest that an owner need only meet those requirements that the owner considers to be significant in the context of the transaction at issue.

purposes of section 1161a(b), protecting the tenant's interests without excessively burdening the new owner.

In response to the foregoing reasoning, the Court of Appeal asserted: "Westlake Health was free to challenge [Dr.] Leevil's claimed ownership in court. (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1010 [198 Cal.Rptr.3d 715] [title can be litigated in a § 1161a unlawful detainer action].)" (*Dr. Leevil, LLC v. Westlake Health Care Center*, *supra*, 9 Cal.App.5th at p. 456.) On this point, the Court of Appeal was misleading. *Orcilla* and the cases on which it relies establish only that Westlake Health could use the unlawful detainer action to litigate whether Dr. Leevil " 'acquired the property at a regularly conducted sale and thereafter "duly perfected" [its] title.' " (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1011, quoting *Vella*, *supra*, 20 Cal.3d at p. 255.) The unlawful detainer action did not permit Westlake Health to litigate every possible issue related to Dr. Leevil's claim of ownership. "Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment." (*Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160; see *Vella*, at p. 258 ["[S]ection 1161a does not require a defendant to litigate, in a summary action within the statutory time constraints [citations], a complex fraud claim involving activities not directly related to the technical regularity of the trustee's sale"].)

Therefore, Westlake Health's ability to challenge Dr. Leevil's claim of ownership was limited, and the Court of Appeal erred in suggesting otherwise. And more generally, if the cloud on a new owner's title concerns an issue that cannot

be litigated in an unlawful detainer action, and if, as the Court of Appeal concluded, a new owner can serve a three-day written notice to quit before perfecting title, then a holdover possessor of the property would have no choice but to vacate the property upon receipt of the notice. It is possible, however, that the cloud on the title would prevent the title from ever being perfected, in which case the holdover possessor would have vacated the property unnecessarily. Therefore, a rule requiring a new owner to perfect title *before* serving its three-day notice would avoid the imposition of possibly unnecessary relocation expenses on the possessor of the property.

Dr. Leevil argues that such a rule will lead to a delay ranging from several days (in a typical case) to several weeks (in a less typical case) and that the delay will increase the new owner's "carrying charges" (i.e., interest payments on debt, property taxes, insurance, etc.), which will increase the damages that a holdover possessor of the property will owe once the new owner prevails in an unlawful detainer action. (See Code Civ. Proc., § 1174, subd. (b).) In the case of a large commercial property, a delay of a week or two might increase damages significantly. Dr. Leevil argues that this increase in damages will increase the number of unlawful detainer actions that can be filed as "unlimited civil cases" — cases, that is, where the amount in dispute exceeds $25,000 (see Code Civ. Proc., § 86, subd. (a)(4)) — thus "clogging the court system." We are not persuaded by the argument. As an initial matter, we doubt that a significant number of unlawful detainer cases will shift, as a result of our decision, from limited civil cases to unlimited civil cases (Code Civ. Proc., § 88). In the typical case, the far greater proportion of the amount in dispute will likely depend on when the unlawful detainer action is filed, as opposed to when the

three-day written notice to quit is served. Here, for example, Dr. Leevil perfected title five days after service of the notice to quit, but it did not initiate this unlawful detainer action until a month later, and during that time damages continued to mount. In any event, our task is to read the statute as written, and for reasons already explained, we read the statute as calling for title to be perfected before the three-day notice is served.

## CONCLUSION

We conclude that an owner that acquires title to property under a power of sale contained in a deed of trust must perfect title *before* serving the three-day written notice to quit required by Code of Civil Procedure section 1161a(b). Accordingly, the judgment of the Court of Appeal is reversed.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**PEÑA, J.**[*]

---

[*] Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Dr. Leevil, LLC v. Westlake Health Care Center

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 9 Cal.App.5th 450
**Rehearing Granted**

_____

**Opinion No.** S241324
**Date Filed:** December 17, 2018

_____

**Court:** Superior
**County:** Ventura
**Judge:** Vincent J. O'Neill, Jr.

_____

**Counsel:**

Enenstein Ribakoff LaViña & Pham, Enenstein Pham & Glass, Teri T. Pham and Courtney M. Havens for Defendant and Appellant.

Law Offices of Ronald Richards & Associates, Ronald N. Richards, Nicholas Bravo; Wilson, Elser, Moskowitz, Edelman & Dicker, Robert Cooper; Law Offices of Geoffrey Long and Geoffrey S. Long for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Teri T. Pham
Enenstein Pham & Glass
12121 Wilshire Boulevard, Suite 600
Los Angeles, CA  90025
(310) 899-2070

Ronald N. Richards
Law Offices of Ronald Richards & Associates
P.O. Box 11480
Beverly Hills, CA  90213
(310) 556-1001