Filed 2/7/25  VIG Private Lending v. Tash CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VIG PRIVATE LENDING, INC., | B334475 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. 23SMCV01102) |
| RAYMOND M. TASH et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa Sepe-Wiesenfeld, Judge.  Affirmed.

Neufeld Marks and Paul S. Marks for Defendants and Appellants.

Nussbaum and Lane Nussbaum for Plaintiff and Respondent.

————————————

# INTRODUCTION

Husband and wife Raymond and Katrin Tash (the Tashes) own real property located at 2959 North Beverly Glen Circle in Los Angeles, California (the property).  A nonjudicial foreclosure took place and VIG Private Lending, Inc. (VIG) became the property owner.  VIG then filed an unlawful detainer action against the Tashes, who refused to quit and deliver possession of the property.  The trial court entered judgment against the Tashes after granting VIG's motion for summary judgment.

On appeal, the Tashes argue VIG's motion for summary judgment should have been denied because there were triable issues of material fact and because the pleadings were "defective."

We disagree with the Tashes and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  *Unlawful Detainer Action*

On March 10, 2023, VIG filed an unlawful detainer action pursuant to Code of Civil Procedure[1] § 1161a against the Tashes.  The complaint alleged:

The property was subject to a deed of trust securing a promissory note owed by the Tashes to VIG.  The Tashes defaulted in the payment of the promissory note.  VIG "caused to be recorded a notice of default . . . and a notice of sale" of the property pursuant to the terms of the deed of trust.  On February 1, 2023, a foreclosure took place and VIG took title to the

---

[1]      Undesignated statutory references are to the Code of Civil Procedure.

2

property, recording a trustee's deed upon sale executed by the Tashes.

VIG was entitled to immediate possession of the property but the Tashes "held possession" and were "not tenants for rent." On March 5, 2023, the Tashes were served with a written three-day notice to quit and deliver possession of the property; a copy of the three-day notice was attached as an exhibit to the complaint. The notice also requested that the Tashes provide terms of a lease agreement. The Tashes failed to comply and continued to possess the property "without [VIG's] permission or consent." VIG alleged the daily fair market rental value (FMV) of the property is $1,000 and requested restitution, holdover damages, and costs.

## II.   *Motion for Summary Judgment*

On June 15, 2023, VIG moved for summary judgment and argued "none of the allegations raised in the pleadings . . . are in dispute." In support of the motion, VIG submitted the declarations of its attorney Lane Nussbaum and the CEO of VIG, Vladimir Valsky.

Valsky's declaration provided:

On October 27, 2021, VIG agreed to loan $620,000 to the Tashes, who signed a promissory note to repay the loan. The parties executed a deed of trust to secure the loan against the property. The deed of trust was recorded on November 2, 2021. The promissory note and the deed of trust were attached as exhibits to the declaration.

The Tashes failed to repay the loan. On August 1, 2022, Elite Realty Services (Elite), as trustee of the deed of trust, served on the Tashes a notice of default and election to sell. The notice of default was recorded on August 4, 2022. On November

3

11, 2022, Elite served the Tashes with notice of the trustee's sale set for December 20, 2022; the notice was recorded on November 17, 2022.  Both the notice of default and the notice of the trustee's sale were attached as exhibits to the declaration.

On December 7, 2022, Valsky sent a text message to Raymond Tash and offered an extension of the sale date.  In exchange for $7,500, Valsky extended the sale date to January 25, 2023.  On January 24, 2023, Raymond sent a text to Valsky, notifying him it "shouldn't be that long" until he obtained the funds to repay his loan and avoid the upcoming foreclosure sale. On January 25, 2023, Valsky replied that the "trustee sale is today at 10:30 a.m." but that he would further extend the sale date in exchange for another $7,500 payment and proof that the Tashes were "current with [their] first mortgage."  A copy of the text messages were included as exhibits.  This delayed the sale date to February 1, 2023.  The Tashes did not satisfy the conditions of Valsky's offer of a second extension.  Thus, on February 1, 2023, the property was sold to VIG at the foreclosure auction.  The trustee's deed upon sale, attached as an exhibit, was recorded on February 22, 2023.

VIG submitted the declaration of registered process server Gerald Yohanna (Yohanna), who stated that he served the Tashes with the three-day notice on March 5, 2023 by "tap[ing] a copy of the notice to the front gate" after receiving "no answer." He also "mailed a second copy of the notice" to the Tashes via first class mail.

Also provided as exhibits were 1) the Tashes' responses to request for admissions, served May 9, 2023, where they admitted the March 5, 2023 notice was "served"; and 2) the Tashes' responses to VIG's special interrogatories, served May 9, 2023,

4

where they stated the daily rental value of the Property is "about $700."

III. ***Opposition to Motion for Summary Judgment***

The Tashes filed multiple oppositions to the motion for summary judgment.

On July 12, 2023, the Tashes filed their first opposition. They argued disputes exist as to the legality of the foreclosure sale in that VIG "had purported[ly] foreclosed on the property, while accepting funds from [the Tashes] for extensions of time for the completion of the sale of the property." The Tashes referred to the lawsuit they initiated against VIG and Valsky, Los Angeles Superior Court (L.A.S.C.) case No. 23STCV06014. A copy of the civil complaint, with 12 causes of action including quiet title, breach of contract, wrongful foreclosure, fraud, etc., was attached as an exhibit.

On August 25, 2023, the Tashes filed their second opposition to the summary judgment motion. They argued service of the three-day notice by Yohanna was "ineffective" as he "does not specify the date on which he mailed the Notice" in his declaration. The Tashes also contend triable issues of fact defeat VIG's claim to title because Valsky "accept[ed] $7500 to postpone the foreclosure sale, and the[n] either neglect[ed] to move the sale date, or intentionally [went] forward with the foreclosure."

The declarations of Raymond Tash and Eric Kazarian (Kazarian) were filed in support. Raymond Tash's declaration provides:

In June 2022, the Tashes "fell behind on [their] payments" and entered into an agreement to refinance the loan through another lender, KAM Financial and owner Kazarian. Valsky "assured" he "would take no actions to enforce the existing loans,

5

as long as we kept him up to date with the progress of the refinance." Despite having kept Valsky informed, he filed the notice of default in August 2022 which "sabotaged the refinance effort, and undermined all the work put into obtaining the loan." The Tashes were "left with no alternative but to sell [their] home." They entered into a purchase agreement with Kazarian where he "would buy the home and rent it back to [the Tashes] for one year, after which [the Tashes] would have a right of first refusal to purchase the house back, or else it would be placed on the market for sale." Raymond paid the taxes owed in December and "also came current on the mortgage payment . . . in that time frame." The Tashes paid the $7,500 extension fee to Valsky and postponed the foreclosure sale.

On January 24, 2023, Raymond sent a text to Valsky stating "a purchase loan had been approved and it 'shouldn't be long' before we could close." On January 25, 2023, Raymond sent another text to Valsky and asked, "Can you give me until tomorrow to pay the [second] $7500?" Valsky replied, "Please email that you will make payment on Jan 26 and ask to postpone trustee sale. When are you closing with [Kazarian]?" A copy of these text messages were included as exhibits. Raymond also included as an exhibit his January 25, 2023 email to Valsky, stating, "As per our conversation and agreement this morning, I will deposit $7500 in your Bank of America account on January 26, 2023 so that the trustee sale will be postponed."

On January 26, 2023, Raymond "physically [went] to Mr. Valsky's office with $7500 in cash" and paid him. The foreclosure sale, however, "went ahead on February 1 (contrary to the expected and paid-for postponement)." On February 2, 2023, Valsky told Raymond that the property was sold in auction to

6

VIG. "VIG's actions had ruined the purchase loan" that Kazarian had arranged.

Kazarian's declaration merely provides that Raymond Tash's declaration accurately describes what happened pertaining to Kazarian and his involvement.

On September 1, 2023, the Tashes filed their third and last opposition. They repeated most of their arguments. They contend VIG's ownership of the property "by fraud and deceit . . . cannot support eviction."

## IV.  *Reply in Support of Summary Judgment Motion*

On September 5, 2023, VIG filed a reply reminding the trial court that the Tashes admitted to having been "served" with the March 5, 2023 notice via their May 9, 2023 responses to VIG's request for admissions. VIG also argued there is no triable issue of fact regarding title because the Tashes "have not presented evidence that there was an agreement not to hold the trustee sale on February 1, 2023."

## V.  *Trial Court's Ruling and Judgment*

The hearing on the summary judgment motion took place on September 7, 2023, where the trial court took the matter under submission. On September 29, 2023, the trial court issued its decision granting VIG's motion for summary judgment.

On October 11, 2023, judgment was entered awarding VIG possession of the Property and holdover damages in the amount of $145,600, calculated at the rate of $700 per day.

This appeal followed.

## DISCUSSION

The Tashes argue the trial court erred in granting summary judgment. They contend there were triable issues of material fact, warranting reversal. [2]

I.  *Standard of Review*

We review an order granting a motion for summary judgment de novo; because "a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 (*AARTS*).) We examine the record to determine whether triable issues of material fact exist and "consider[] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66.)

The moving party "bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case.' " (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) The burden then shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff cannot "rely on assertions that are

---

[2]    The Tashes made a request for judicial notice in footnote 1 of their opening brief. California Rules of Court, rule 8.252 states that to obtain judicial notice by a reviewing court, "a party must serve and file a separate motion with a proposed order." (Cal. Rules of Court, rule 8.252(a)(1).) We deny the Tashes' request on procedural grounds. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1086, fn. 9.)

'conclusory, argumentative[,] or based on conjecture and speculation,' but rather [is] required to 'make an independent showing by a proper declaration or by reference to a . . . discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact.' " (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1404; see *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

Thus, we must identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*AARTS*, *supra*, 179 Cal.App.3d at pp. 1064–1065.) We will not, however, entertain new factual allegations or arguments on appeal that were not raised before the trial court. " '[U]nless they were factually presented, fully developed[,] and argued to the trial court, potential theories which could theoretically create "triable issues of material fact" may not be raised or considered on appeal.' " (*Peart v. Ferro* (2004) 119 Cal.App.4th 60, 70.) A new theory may be presented for the first time on appeal where it " 'involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence.' " (*In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 510–511.)

II.    *Applicable Law*

Unlawful detainer actions are authorized and governed by section 1161 et seq. The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property. (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805 (*Coyne*); see *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973 (*Malkoskie*) ["An

unlawful detainer action is a summary proceeding ordinarily limited to resolution of the question of possession."].) "The policy behind the statute is clear, however: to provide a summary method of ouster where an occupant holds over possession after sale of the property." (*Evans v. Superior Court* (1977) 67 Cal.App.3d 162, 168 (*Evans*).)

" 'Unlawful detainer actions are . . . of limited scope, generally dealing only with the issue of right to possession and not other claims between the parties, even if related to the property.' " (*Coyne, supra*, 26 Cal.App.5th at p. 805; see also *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*); *Malkoskie, supra*, 188 Cal.App.4th at p. 973.) As a result, an unlawful detainer judgment is given limited res judicata effect and "will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title." (*Vella*, at p. 255.)

Section 1161a is a "qualified exception" to the rule that title cannot be tried in an unlawful detainer action, in that it "provides for a narrow and sharply focused examination of title." (*Vella, supra*, 20 Cal.3d at p. 255.) Specifically here, pursuant to section 1161a, the person seeking a judgment of unlawful detainer must establish that 1) "the property has been sold in accordance with Section 2924 of the Civil Code . . . under a power of sale contained in a deed of trust," (§ 1161a, subd. (b)(3)); 2) "the title under the sale has been duly perfected," (*ibid.*); *and* 3) the occupant "continues in possession of . . . real property after a three-day written notice to quit the property has been served." (*Id.*, subd. (b); see *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 479 (*Dr. Leevil*); see also *Evans, supra*, 67 Cal.App.3d at p. 169; see also *Vella*, at p. 255.)

10

III. *Analysis*

1) **Property Sold in Accordance with Civil Code § 2924**

The statutory scheme under Civil Code section 2924 can be summarized as follows. " 'Upon default by the trustor [under a deed of trust containing a power of sale], the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citation.] The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. [Citation.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citation.] After the 3-month period has lapsed, a notice of sale must be published, posted and mailed [at least] 20 days before the sale and recorded [at least] 14 days before the sale. [Citation.] The trustee may postpone the sale at any time before the sale is completed. . . . *The conduct of the sale, including any postponements, is governed by Civil Code section 2924g.* [Citation.] The property must be sold at public auction to the highest bidder.' " (*Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 32 (*Royal Thrift*), italics added.)

VIG provided evidence that the parties executed and recorded a deed of trust to secure the $620,000 promissory note against the property, and that the Tashes fell behind on their payments. VIG also provided evidence that on August 1, 2022, Elite served a notice of default and election to sell on the Tashes, which was recorded on August 4, 2022. A 3-month period lapsed before Elite proceeded to serve the Tashes with notice of the trustee's sale. The notice of sale was recorded on November 17, 2022, which meets the requirement that recordation take place at least "14 days before the sale" set for December 20, 2022. (*Royal*

11

*Thrift, supra,* 123 Cal.App.4th at p. 32; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86.)  Valsky agreed to an extension of the sale date to January 25, 2023 in exchange for $7,500 from the Tashes.  On January 25, 2023, Valsky offered a second extension for $7,500 and proof that the Tashes were "current with [their] first mortgage."  This delayed the sale date to February 1, 2023.  The Tashes "did not satisfy the conditions of [Valsky's] offer of a second extension."  The evidence also shows the property was sold at a foreclosure auction (per Civ. Code, § 2924g, subd. (a)) on February 1, 2023.

The evidence referred to above includes Valsky's declaration, the signed promissory note, the recorded deed of trust, the recorded notice of default and election to sell, the recorded notice of the trustee's sale, text messages between Valsky and Raymond Tash, and the recorded trustee's deed upon sale.  VIG established that the property was sold in accordance with Civil Code section 2924.

The burden shifts to the Tashes who contend a triable issue of material fact exists as to whether the foreclosure sale was valid.  They contend they entered into a second agreement with Valsky to postpone the sale for $7,500 pursuant to Civil Code section 2924g, subdivision (c)(1), which provides that the "trustee *shall postpone* the sale in accordance with . . . [¶] . . . [¶] (C) *By mutual agreement, whether oral or in writing*, of any trustor and any beneficiary or any mortgagor and any mortgagee."  (Civ. Code, § 2924g, subd. (c)(1), italics added.)

VIG disagrees and contends "[a]ny argument by [the Tashes] alleging a violation of any provision . . . other than Civil Code section 2924 matters not, as it would be wholly outside the scope of an unlawful detainer and the jurisdiction of the court.

This includes [the Tashes'] effort to shoehorn Civil Code section 2924g, subdivision (c)(1), regarding the postponement of foreclosure sale proceedings by mutual agreement."

We disagree with VIG. Unlawful detainer actions under section 1161a, subdivision (b)(3) require the sale of the property to comply with Civil Code section 2924, which in turn requires the "conduct of the sale, including any postponements, [to be] governed by Civil Code section 2924g." (*Royal Thrift, supra,* 123 Cal.App.4th at p. 32.) Subdivision (c)(1) of Civil Code section 2924g is the very statute the Tashes claim VIG violated in failing to postpone the sale as agreed upon. An "agreement to postpone the sale under [Civil Code] section 2924g cannot be disregarded in evaluating whether the sale procedure was substantially defective. Only a properly conducted foreclosure sale, free of substantial defects in procedure, creates rights in the high bidder at the sale." (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 822.)

The problem with the Tashes' position is that the evidence they provided does not establish a violation of any agreement to continue the sale a second time. The evidence shows Valsky's January 25, 2023 text message conversation with Raymond indicating he will provide a second extension in exchange for another $7,500 payment and proof that the Tashes were "current with [their] first mortgage." However, there is absolutely no evidence in the record that establishes that a) the Tashes were "current" on the first mortgage at that point in time (from January 25 to February 1, 2023), and b) the Tashes provided proof to Valsky that they were current.

In their opening brief, the Tashes claim, "By this time, the *taxes* had already been paid, and Mr. Valsky had been so advised." (Italics added.) The page they reference in support shows the Tashes were current with the Los Angeles County Tax Collector as of December 19, 2022; it does not establish that they were current on the first mortgage during the relevant time period. In addition, nowhere in his declaration did Raymond state he actually communicated to Valsky any proof that he was current on the first mortgage.

The Tashes failed to demonstrate a triable issue of material fact as to this element.

### 2) Title to the Property was Duly Perfected

"Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt." (*Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, 841.) "The term 'duly' implies that all of those elements necessary to a valid sale exist, else there would not be a sale at all. If there is want of performance or want of true consent the title cannot be said to be perfected." (*Ibid*.) "A bona fide purchaser is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings." (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 442.)

VIG expressly alleged in its unlawful detainer complaint the specific facts establishing perfected legal title to the property, including that the foreclosure sale was conducted in accordance with Civil Code section 2924. The evidence VIG provided in support of its motion for summary judgment demonstrated that VIG had indisputably perfected its title through recordation of the trustee's deed upon sale recorded on February 22, 2023.

14

The burden shifts to the Tashes to show a triable issue of material fact as to whether title was duly perfected. The Tashes provided evidence that they had initiated a civil complaint against VIG and Valsky for quiet title, fraud, etc. in L.A.S.C. case No. 23STCV06014. However, this complaint does not constitute evidence that title by VIG was not duly perfected. "It is generally understood . . . that a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required in the summary judgment context." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.) The moving party must demonstrate the presence or absence of a genuine triable issue by affidavit or other competent means. (*Ibid.*) The Tashes did not do so here.

The Tashes' primary concern on appeal is the effect of a final unlawful detainer judgment on the Tashes' separate civil action for quiet title and fraud against VIG and Valsky.

Unlawful detainer actions "usually ha[ve] very limited res judicata effect" because the proceeding is "summary in character" and ordinarily determines "only claims bearing directly upon the right of immediate possession." (*Vella, supra*, 20 Cal.3d at p. 255.) "[S]ection 1161a does not require a defendant to litigate, in a summary action within the statutory time constraints [citations], a complex fraud claim involving activities not directly related to the technical regularity of the trustee's sale. In the absence of a record establishing that the claim was asserted and that the legal and factual issues therein were fully litigated, we conclude that the question of fraudulent acquisition of title was not foreclosed by the adverse judgment in the earlier summary proceeding." (*Id.* at p. 258.) To the extent that issues of title raised by the Tashes are not cognizable in an unlawful detainer

15

action, they cannot transmute a proper complaint for unlawful detainer into a quiet title action; rather, the appropriate remedy is for parties raising issues of title to seek relief by way of separate actions to quiet title, which the Tashes have done here. (*Evans*, *supra*, 67 Cal.App.3d at p. 170; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160.)

3) <u>**Continued Possession After Service of Three-Day Notice to Quit**</u>

The previous owner of a property that has been sold at a nonjudicial foreclosure sale must be given a three-day written notice to quit. (§ 1161a, subd. (b); see *Dr. Leevil*, *supra*, 6 Cal.5th at p. 482 [notice to quit, as first step in the eviction process, was premature and void where it was served before the trustee's deed was recorded to perfect title].)

VIG provided evidence in the form of the declaration of registered process server Yohanna, who stated he served the Tashes with the three-day notice on March 5, 2023. He "taped a copy of the notice to the front gate" after receiving "no answer" and "mailed a second copy of the notice" to the Tashes via first class mail. Also provided as exhibits were the Tashes' responses to request for admissions, served May 9, 2023, where they admitted the March 5, 2023 notice was "served." It is undisputed the Tashes continued to possess the property during the underlying proceedings. We see no material defect in the evidence establishing these facts.

We conclude the record establishes the absence of triable issues of material fact.

## DISPOSITION

The judgment is affirmed.  Respondent VIG is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


WILEY, J.