Filed 3/17/21  Dr. Leevil v. Westlake Health Care Center CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| DR. LEEVIL, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WESTLAKE HEALTH CARE CENTER,<br><br>    Defendant and Appellant. | 2d Civ. No. B304339<br>(Super. Ct. No. 56-2015-00465793-CU-UD-VTA)<br>(Ventura County) |

Westlake Health Care Center (Westlake Health) appeals from the trial court's denial of its motion for restitution. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2002, Westlake Village Property, L.P. (Westlake Village), leased a skilled nursing facility to Westlake Health for a term of 20 years.  (*Dr. Leevil, LLC v. Westlake Health Care Center* (2017) 9 Cal.App.5th 450, 452 (*Leevil I*), reversed in part by *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474 (*Leevil II*).)  The lease had an automatic

subordination clause providing that it was to be "subordinated to all existing and future liens and encumbrances against the [facility]." (*Leevil I*, at p. 455, fn. 2.)  Six years later, Westlake Village took out a loan from TomatoBank, N.A., secured by its deed of trust on the facility.  (*Id.* at p. 452.)  When Westlake Village defaulted, TomatoBank sold the loan to Dr. Leevil, LLC (Leevil).  (*Id.* at pp. 452-453.)  Leevil instituted foreclosure proceedings, and purchased the facility at a trustee's sale.  (*Id.* at p. 453.)

The day after it purchased the facility, Leevil served Westlake Health with a notice to quit.  (*Leevil I*, *supra*, 9 Cal.App.5th at p. 453.)  Leevil recorded title five days later. (*Ibid.*)  When Westlake Health refused to vacate the facility, Leevil sued for unlawful detainer.  (*Ibid.*)

The trial court found that Westlake Health's lease was subordinate to Leevil's deed of trust and had been extinguished by the trustee's sale.  (*Leevil I*, *supra*, 9 Cal.App.5th at p. 453.)  The court also found that the notice to quit was valid notwithstanding that it was served before title was perfected. (*Ibid.*)  Westlake Health then "withdr[ew] its defense as to service of the three-day notice" and stipulated to judgment of possession in favor of Leevil.

We affirmed the trial court's findings on appeal. (*Leevil I*, *supra*, 9 Cal.App.5th at pp. 454-457.)  The Supreme Court subsequently granted Westlake Health's petition for review of our decision, limiting its review to the issue of whether title must be perfected before serving a notice to quit.  (*Leevil II*, *supra*, 6 Cal.5th at p. 477.)  The court concluded that it was, and reversed that portion of our decision holding to the contrary.  (*Id.* at pp. 484-485.)

After the remittiturs issued, Leevil dismissed its unlawful detainer action against Westlake Health. Ten months later, Westlake Health moved for $5.7 million in restitution, an amount representing the income it allegedly would have earned during the four years following its October 2015 surrender of the skilled nursing facility to Leevil.

The trial court denied Westlake Health's motion. It concluded that the law of the case was that Westlake Health's lease was subordinate to the foreclosure deed of trust and had been extinguished by the foreclosure sale. (Cf. *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 ["'The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case'"].) Westlake Health thus had no legal claim to possession of the skilled nursing facility after the sale. Under these circumstances, the trial court ruled that a restitution award would be inequitable.

It also determined that Leevil's failure to serve a valid notice to quit did not alter the balance of equities. Between July 2015 (when Westlake Health surrendered possession of the facility) and December 2018 (when the Supreme Court issued its opinion), Leevil had no need to serve a new notice since the case had consistently been decided in its favor. Only after the Supreme Court issued its opinion did Leevil know that a new notice would be required. But by that point Westlake Health had long since vacated the facility. A new notice would have been meaningless.

3

DISCUSSION

Westlake Health contends the trial court erroneously denied its motion for restitution. We disagree.

If an appellate court reverses a judgment or order, it may "order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order . . . and may direct the entry of a money judgment sufficient to compensate for property or rights not restored." (Code Civ. Proc., § 908.) But "[e]ven if the reviewing court has not ordered restitution, the trial court whose order or judgment has been reversed on appeal has the inherent authority to afford restitutionary relief." (*Beach Break Equities, LLC v. Lowell* (2016) 6 Cal.App.5th 847, 852 (*Beach Break*).) This authority includes "the award of profits of business conducted on [property] taken from tenant following incorrect initial judgment." (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 662 (*Munoz*).) "'"The fundamental rule guiding the court in such proceedings is, so far as possible, to place the parties in as favorable a position as they could have been in had the judgments not been enforced pending appeal." [Citation.]' [Citation.]" (*Beach Break*, at p. 852, alterations omitted.)

Restitution is "a matter of a right if the judgment is reversed or set aside, unless [it] would be inequitable." (*Beach Break*, *supra*, 6 Cal.App.5th at pp. 852-853.) "Whether a party is entitled to restitution following reversal [thus] presents a question calling for judicial discretion." (*Id.* at p. 853.) We will not disturb a trial court's denial of restitution absent "a showing of manifest abuse of [that] discretion." (*Ibid.*)

Westlake Health has failed to show that the trial court abused its discretion here. After Leevil purchased the

4

skilled nursing facility at the trustee's sale, Westlake Health occupied it without a valid lease—i.e., as a holdover tenant.  (See *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820.)  Westlake Health then *voluntarily* gave up its holdover tenancy when it stipulated to Leevil's possession of the facility.  That stipulation is binding.  (Code Civ. Proc., § 664.6, subd. (a).)  As such, Westlake Health cannot now claim that it is entitled to restitution for profits it would have earned had it remained in possession of the facility post stipulation.  (Civ. Code, § 3515 [party that "consents to an act is not wronged by it"].)  Such a result would be inequitable, as the court below rightly concluded.

That Leevil prematurely served the notice to quit does not shift the balance of equities in Westlake Health's favor.  In the stipulated judgment, Westlake Health withdrew any defense to its possession of the skilled nursing facility based on the notice to quit—valid or otherwise.[1]  It thus cannot now claim that it had the right to be served with a valid notice before dispossession.  (Cf. Civ. Code, § 3532 ["law neither does nor requires idle acts"].)

Additionally, a holdover tenant is entitled to possession of property only "until the detainer action culminates in a judgment of forfeiture."  (*Four Seas Inv. Corp. v. International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 612.)  That the parties here secured that judgment through

---

[1] Westlake Health claims that this court previously rejected Leevil's arguments regarding its withdrawal of any notice-to-quit defense.  But that withdrawal was separate from Westlake Health's preservation of its appellate rights in the stipulation.  Our prior opinion considered only the latter.  (See *Leevil I, supra,* 9 Cal.App.5th at p. 453.)

stipulation rather than at the conclusion of trial does not change this rule. A "'judgment entered without contest, by consent or stipulation, is as conclusive a merger or bar as a judgment rendered after trial.' [Citation.]" (*Studley v. Benicia Unified Sch. Dist.* (1991) 230 Cal.App.3d 454, 460.)

None of the cases on which Westlake Health relies supports a restitution award here. First, none of the cited cases involved a lease that had been extinguished. (See *Beach Break*, *supra*, 6 Cal.App.5th at p. 850 [no evidence that foreclosure sale automatically extinguished lease]; *Munoz, supra*, 195 Cal.App.4th at pp. 651-652 [existing lease with two five-year options]; *Stockton Theatres, Inc. v. Palermo* (1953) 121 Cal.App.2d 616, 618-619 [competing claims over whether lease was valid].) And second, none involved a situation where the party moving for restitution had stipulated to giving up possession of the contested property.

In short, the foreclosure sale extinguished Westlake Health's lease of the skilled nursing facility. The stipulated judgment then terminated its right to possession of the facility. Westlake Health thus stands in "as nearly as may be in the condition in which [it] stood previously" without a restitution award. (*Ward v. Sherman* (1909) 155 Cal. 287, 291.) The trial court did not abuse its discretion in denying the restitution claim.

6

DISPOSITION

The trial court's order denying Westlake Health's motion for restitution, entered December 12, 2019, is affirmed. Leevil shall recover its costs on appeal.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.

7

Vincent J. O'Neill, Jr., Judge

Superior Court County of Ventura

_____

Enenstein Pham & Glass, Teri T. Pham and Matthew W. Rosene for Defendant and Appellant.

Law Offices of Ronald Richards & Associates and Ronald N. Richards; Law Offices of Geoffrey Long and Geoffrey S. Long for Plaintiff and Respondent.