Filed 10/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HOMEWARD OPPORTUNITIES FUND I TRUST 2019-2, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ILIAS LOUIE TAPTELIS, <br><br> Defendant and Appellant. | H049791 <br> (Santa Clara County <br> Super. Ct. No. 21CV378676) |

     Upon purchasing property in a nonjudicial foreclosure sale under a borrower's deed of trust, the new owner must perfect title under the sale before seeking to evict the trustor/borrower. (Code Civ. Proc., § 1161a, subd. (b)(3);[1] *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474 (*Dr. Leevil*).) Although the recording of a trustee's deed is typically sufficient to raise a conclusive presumption of title under the sale as to a bona fide purchaser for value without notice (Civ. Code, § 2924, subd. (c)), plaintiff Homeward Opportunities Fund I Trust 2019-2 (Homeward), the beneficiary under a deed of trust executed by defendant-borrower Ilias Louie Taptelis, purchased the trust property subject to Taptelis's duly recorded lis pendens—notice of Taptelis's pending wrongful foreclosure action. Homeward thereafter served Taptelis with notice to quit the premises and obtained a judgment of unlawful detainer against him, without first expunging the lis pendens. Because the lis pendens clouded Homeward's title under the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

sale, and Taptelis was denied the opportunity to assert it in the unlawful detainer trial as a defense to Homeward's claim of title, we reverse the unlawful detainer judgment.

## I. BACKGROUND

### A. *The Nonjudicial Foreclosure and the Wrongful Foreclosure Suit*

Taptelis borrowed $1.24 million from Recovco Mortgage Management to purchase property located at Fennel Court. To secure the loan, he executed a Deed of Trust by which he conveyed the Fennel Court property to Stewart Title of California, Inc., as trustee with power of sale, to hold for the benefit of Recovco's designee, Mortgage Electronic Registration Systems, Inc. (MERS). The deed of trust was recorded in June 2019.

Taptelis defaulted on the loan later in 2019. After his default, the following documents concerning the Fennel Court property were recorded in Santa Clara County: (1) In April 2020, MERS executed an Assignment of Deed of Trust, through which it purported to assign its beneficial interest under the Deed of Trust to Homeward;[2] (2) in May 2020, Specialized Loan Servicing LLC (SLS), acting as attorney-in-fact for Homeward, executed a Substitution of Trustee, through which Homeward purported to substitute Quality Loan Service Corporation (Quality) for Stewart Title as the trustee; and (3) in June 2020, Quality issued a Notice of Default and Election to Sell Under Deed of Trust.

As stated in the Notice of Default, as of June 2020, Taptelis needed to pay $87,221.09 to cure the default. Quality appended a California Declaration of Compliance to the Notice of Default, representing that the mortgage servicer had exercised due diligence to contact Taptelis to assess his financial situation and explore options to avoid foreclosure 30 days or more before the date of the declaration.

---

[2] On appeal, Taptelis disputes whether several of the recorded documents had their intended effect.

Quality's Notice of Trustee's Sale, scheduled for December 4, 2020, was recorded in October 2020.

Two weeks later, Taptelis filed a civil action challenging the foreclosure and naming various involved entities as defendants, including Homeward. In the complaint, Taptelis described the documents that had been recorded to date.

Taptelis alleged nine causes of action: (1) Violation of the Homeowner Bill of Rights by filing the Notice of Default while Taptelis had a loan modification application pending, that is, "dual-tracking"; (2) Violation of Civil Code section 2923.5, subdivision (b), by SLS and Quality for failing to provide certain information prior to filing the Notice of Default; (3) Violation of Civil Code section 2924.17 by SLS and Quality by submitting a declaration in support of the Notice of Default that was not based on reliable and competent evidence; (4) Violation of the implied covenant of good faith and fair dealing by dual-tracking; (5) Negligence in servicing the loan in connection with the alleged dual-tracking; (6) Wrongful foreclosure flowing from the foregoing violations of the HBOR and Civil Code; (7) Cancelation of the Assignment, Substitution, Notice of Default, and Notice of Trustee's Sale on the ground that they were not based on reliable and competent evidence and that SLS and Quality improperly filed the Notice of Default; (8) Violation of the Unfair Competition Law arising out of the foregoing causes of action; and (9) Quiet Title.

Two days prior to the foreclosure sale, Taptelis had a lis pendens recorded in connection with the wrongful foreclosure action.[3]

---

[3] Although the trial court prevented Taptelis from introducing evidence at trial concerning the lis pendens, the parties agree that a lis pendens was in effect throughout the trial court proceedings in this action, from before the foreclosure sale until after the unlawful judgment detainer was entered.

3

On December 11, 2020, Santa Clara County recorded Quality's Trustee's Deed Upon Sale. As set forth therein, Quality sold the Fennel Court property to Homeward pursuant to the Deed of Trust through a public auction held on December 4, 2020.

**B.** ***The Notice to Quit and this Action***

On March 16, 2021, Homeward served notice to quit on Taptelis and all unknown occupants, tenants, and subtenants at the Fennel Court property. Taptelis did not vacate the property, so Homeward initiated the present unlawful detainer suit.

On March 24, 2021, Homeward filed its verified unlimited civil unlawful detainer complaint. Homeward alleged that it had obtained ownership of the property pursuant to a nonjudicial foreclosure on December 4, 2020. Homeward sought to wrest possession of the property from Taptelis and any other unnamed occupants, tenants, and subtenants.

The following month, in the wrongful foreclosure case, Taptelis filed an ex parte application shortening time for a hearing on a motion to consolidate that wrongful foreclosure action with this unlawful detainer action or, in the alternative, a motion to stay this action. Taptelis had not yet filed a motion to consolidate, and the trial court summarily denied the ex parte.

Taptelis answered the unlawful detainer complaint in June 2021. In September 2021, Taptelis submitted for filing in the wrongful foreclosure case a motion to consolidate the two cases or alternatively stay this unlawful detainer case. Later in September, Taptelis filed an ex parte application in this case requesting it be stayed. In the application, Taptelis noted that his duly noticed motion in the wrongful foreclosure case would not be heard until after the unlawful detainer trial date. The trial court denied the ex parte application without prejudice, with instructions to file "[t]he request by noticed motion in the appropriate civil action." The trial court subsequently continued the trial in this action for two weeks, to October 27, 2021.

On October 18, 2021, Taptelis filed an ex parte application in the wrongful foreclosure case seeking a stay—pending resolution of his motion to consolidate—of the

4

trial in this unlawful detainer case. The trial court summarily denied the ex parte application.

The day of the unlawful detainer trial, asked for his time estimate, Taptelis orally advised the court that he "would be looking to request a stay." Taptelis stated that his motion to consolidate had not been calendared in the wrongful foreclosure case.[4] The trial court acknowledged that the "motion to stay proceedings . . . would be within [its] jurisdiction" and understood Taptelis's request as "a motion to continue, so that the other court can rule on the motion to consolidate[.]" Reasoning that an unlawful detainer is "a summary proceeding" that "can't keep getting continued and wait for the other case," the trial court denied the request because "[t]his case has to go forward."

At the bench trial, over Taptelis's objections, Homeward relied on judicial notice of recorded documents—the Deed of Trust, Assignment, Substitution, Notice of Default, Notice of Trustee's Sale, and Trustee's Deed—to establish that it had perfected title to the property by way of a nonjudicial foreclosure sale conducted in compliance with section 2924 of the Civil Code. Homeward called one witness, a process server, to establish that it had served a notice to quit.

In his defense, Taptelis confirmed he secured his loan from Recovco with a Deed of Trust but testified that he never received notice that he had any new creditor and that he had submitted a loan modification application to his loan servicer. The trial court then sustained Homeward's objection that issues concerning Taptelis's loan modification application were beyond the scope of the unlawful detainer. The trial court then sustained relevance objections to testimony from Taptelis regarding his pending wrongful foreclosure case and recorded lis pendens. Taptelis did not offer other evidence.

On December 29, 2021, the trial court issued a written ruling. The trial court "took judicial notice of the recorded documents, their legally operative language, the

_____

[4] Apparently due to issues stemming from the pandemic, Taptelis was not issued a hearing date in the wrongful foreclosure action until after the unlawful detainer trial.

names of the parties, the identification of the document, the recordation date and the court [then] deduce[d] the legal effect of those recorded instruments.  The court . . . thus conclude[d] the following:  [Homeward] acquired the subject property through foreclosure proceedings, which were (by benefit of a rebuttable presumption) in accordance with applicable law, namely Civil Code § 2924."  Moreover, the trial court found that "a three[-]day notice to quit was properly served" based on the testimony and documents introduced through the process server.

In January 2022, Taptelis filed both a limited civil notice of appeal and an ex parte application for stay of judgment or writ of possession pending the appeal.  The trial court entered judgment on January 31, 2022, and the writ of possession issued on February 1, 2022.

Taptelis unsuccessfully petitioned this court for a peremptory writ staying the judgment and the writ of possession.

Taptelis timely filed an amended unlimited civil notice of appeal challenging the judgment.

## II.    DISCUSSION

Taptelis makes a series of contentions ranging from threshold challenges to Homeward's unlawful detainer action to fallback challenges to the evidence on which the trial court relied.  Below, we reject Homeward's contention that Taptelis's appeal is moot and conclude that, under *Dr. Leevil*, the title under the trustee's sale had not been duly perfected because Homeward had resolved neither the lis pendens nor the underlying litigation.

### A.    *Homeward's Claim of Mootness*

As a threshold matter, we reject Homeward's contention that its sale of the property to a third party moots Taptelis's appeal.[5]

---

[5] We grant Homeward's request for judicial notice of (1) the grant deed recorded on November 8, 2022; (2) the Withdrawal of December 2, 2020 Notice of Pendency of

6

" 'Generally, courts decide only "actual controversies" which will result in a judgment that offers relief to the parties.' [Citation.] 'Thus, appellate courts as a rule will not render opinions on moot questions . . . .' [Citation.] 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' [Citation.] . . . But, where a court can afford the party at least some relief, even if not all the relief originally requested, the court should not dismiss a case as moot." (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031.)

As Taptelis notes, even if he can no longer regain possession of the property, his appeal is not moot because a reversal would potentially entitle him to restitution. "When [a] judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination." (§ 908; see also *Shapell Socal Rental Props., LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 209-210 (*Shapell*).)

In *Shapell*, for example, the prevailing landlord in a commercial unlawful detainer action argued that the tenant's appeal was moot because the tenant could not regain possession of the leased premises. (*Shapell*, *supra*, 85 Cal.App.5th at p. 209.) The court

Action recorded on May 31, 2022; and (3) the order expunging a lis pendens recorded on November 15, 2022. We also note that the parties agree that Homeward has at least purported to transfer the property to a third party—we assume for mootness purposes that the transfer is effective. We deny Taptelis's request for judicial notice of an excerpt of an appellate brief submitted to this Court in a separate writ proceeding between the parties because the excerpt is irrelevant to the issues reached herein.

explained that although restitution "may include restoring an evicted tenant to possession of the leased premises," " ' "appellate courts are not apt to invoke [the statute] to reinstate a tenant's right to possession after years have gone by" ' " such that " ' "for all practical purposes, the only appropriate remedy for vacating tenants who prevail on appeal, but who failed to obtain a stay, may be a monetary award 'sufficient to compensate [the tenant] for the property rights not restored.' " ' " (*Id*. at pp. 210-211, italics removed.)

Although *Shapell* concerned a landlord-tenant unlawful detainer action rather than a post-foreclosure wrongful foreclosure action, this is a distinction without a difference as to mootness. Irrespective of the basis for the unlawful detainer action, the point remains that a monetary award of restitution may be available to a prevailing defendant on appeal as an alternative to the restoration of possessory rights.

In its reply in support of its motion to dismiss, Homeward implicitly concedes that section 908 creates a right to monetary restitution but argues that restitution would be unwarranted here. Homeward argues both that Taptelis should litigate any claim for restitution it may have in the wrongful foreclosure case and that Taptelis cannot obtain restitution even if his appeal is successful because he lived " 'rent-free' " on the property from December 2020 to February 2022. But Homeward fails to articulate any theory by which Taptelis could abandon his appeal from the unlawful detainer judgment and yet seek restitution—the purpose of which would be to return him "so far as possible to the position[] [he] occupied before the enforcement of or execution on [that] judgment." (§ 908.) The relief, if any, available in equity may turn on the nature of any error the trial court made in adjudicating the parties' respective rights to possession and the relevance of Taptelis's wrongful foreclosure claims to that adjudication. Thus, Homeward's reply raises only downstream equitable issues to be addressed, if at all, on remand; these do not establish an inability to afford Taptelis relief if his appeal proves meritorious.

8

**B.**     *General Principles*

**1.**     *The Nonjudicial Foreclosure Process*

" 'Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924 . . . .) The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. (Civ. Code, § 2924 . . . .) After the notice of default is recorded, the trustee must wait [approximately] three calendar months before proceeding with the sale. (Civ. Code, § 2924, subd. [(a)(2)-(4)] . . . .) After the [specified time] period has elapsed, a notice of sale must be published, posted and mailed [at least] 20 days before the sale and recorded [at least 20] days before the sale. (Civ. Code, § 2924f . . . .) . . . The property must be sold at public auction to the highest bidder. (Civ. Code, § 2924g, subd. (a) . . . .)' " (*Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 32 (*Royal Thrift*).) Pursuant to Civil Code section 2924h, subd. (c), the trustee's sale is " 'deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within [21] calendar days after the sale . . . .' " (*Dr. Leevil*, *supra*, 6 Cal.5th 474, 481, italics omitted.)[6]

A recital in the trustee's deed "of compliance with all requirements" regarding service of the notice of default "shall constitute prima facie evidence of compliance . . . and conclusive evidence thereof *in favor of bona fide purchasers . . . for value and without notice*." (Civ. Code, § 2924, subd. (c), italics added.) " 'Thus, once a deed reciting that all legal requirements have been satisfied has been transferred to a buyer at a foreclosure sale, the sale can be successfully attacked on the grounds of procedural irregularity only if the buyer is not a bona fide purchaser.' " (*Royal Thrift*, *supra*, 123 Cal.App.4th at p. 32, italics omitted; *Pacific States Savings & Loan Co. v. O'Neill* (1936)

---

[6] Perfection of the trustee's sale is distinct from perfection of title. (*U.S. Financial, L.P. v. McLitus* (2016) 6 Cal.App.5th Supp. 1, 3-4.)

7 Cal.2d 596, 599; *Sorensen v. Hall* (1934) 219 Cal. 680, 682-683.)  "A bona fide purchaser is one who has purchased property for value *without notice of any defects* in the title of the seller."  (*Walters v. Calderon* (1972) 25 Cal.App.3d 863, 876, italics added.)

      **2.**      ***Lis Pendens and Expungement***

Notice of a pending action, or a lis pendens, "may be recorded in an action . . . 'which would, if meritorious, affect . . . title to, or the right to possession of, specific real property.' "  (*BGJ Assocs., LLC v. Superior Court* (1999) 75 Cal.App.4th 952, 967; see also §§ 405.4, 405.20.)  Although the pendency of the action does nothing to confer "any rights in the property in and of itself," the recording of the lis pendens " 'provides constructive notice of the litigation, such that any judgment later obtained in the action relates back to the filing of the lis pendens.  [Citation.]  A lis pendens clouds title until the litigation is resolved or the lis pendens is expunged, and any party acquiring an interest in the property after the action is filed will be bound by the judgment.  [Citation.]' [Citation.]  In other words, a party obtaining an interest in the property subsequent to the lis pendens takes with constructive notice of the pending action and will be bound by the judgment in that action."  (*Integrated Lender Servs., Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 877 (*Integrated Lender*); see also *Nunn v. JPMorgan Chase Bank, N.A.* (2021) 64 Cal.App.5th 346, 363; *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523, fn. 2.)

The Legislature has enacted a statutory scheme intended to discourage abuse and to make it easier to remove recorded lis pendens before trial.  (See *Shoker v. Superior Court* (2022) 81 Cal.App.5th 271, 280-281 (*Shoker*).)  Procedures for expunging improper lis pendens are designated by statute.  " 'If the pleading filed by the claimant does not properly plead a real property claim, the lis pendens must be expunged upon motion under [section] 405.31.' "  (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647.)  Upon motion under section 405.32, "the court shall order that the notice be

expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (See also § 405.30.) On such motions, the "court shall direct that the [prevailing] party . . . be awarded the reasonable attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." (§ 405.38.)

"Any party aggrieved by an order made on a motion" to expunge a lis pendens may petition for review by writ of mandate, which must be filed and served no more than 30 days after service of the order on the expungement motion. (§ 405.39) The order expunging the lis pendens does not become effective, and may not be recorded, until the time for filing the petition for writ of mandate has passed or, if such a petition is timely filed, until the petition is finally adjudicated. (§ 405.35.) Once a lis pendens "has been expunged, the claimant may not record another notice of pending action as to the affected property without leave of the court in which the action is pending." (§ 405.36.)

### 3. *Scope of Section 1161a, subd. (b)(3) Proceedings*

"Unlawful detainer actions are authorized and governed by Code of Civil Procedure section 1161 et seq. 'The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property.' " (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805 (*Coyne*).)  " 'It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings. [Citation.] The statutory requirements in such proceedings " 'must be followed strictly.' " ' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 480.)  Because the remedy of unlawful detainer is " 'purely statutory in nature, it is essential that a party seeking the remedy bring [it]self clearly within the statute.' " (*Ibid*.)

" 'Unlawful detainer actions are . . . of limited scope, generally dealing only with the issue of right to possession and not other claims between the parties, even if related to

11

the property.' " (*Coyne*, *supra*, 26 Cal.App.5th at p. 805; see also *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*); *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973 (*Malkoskie*).) As a result, an unlawful detainer judgment usually has limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title. (*Vella*, *supra*, 20 Cal.3d at p. 255.)

Section 1161a is a "qualified exception" to the general rule against resolution of claims other than possession, in that it "provides for a narrow and sharply focused examination of title." (*Vella*, *supra*, 20 Cal.3d at p. 255.) Section 1161a, subd. (b) "enumerate[s] five 'cases' in which its substantive provision applies." (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 478.) "Section 1161a[, subd.] (b)(3) is one of those 'cases[.] . . . ' " (*Id*. at p. 479, italics removed.) "Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by [the holdover possessor], or a person under whom such person claims," a plaintiff seeking a judgment of unlawful detainer must establish that "the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3); *Dr. Leevil*, *supra*, 6 Cal.5th at pp. 379, 381; see also *Vella*, *supra*, 20 Cal.3d at p. 255; see also *Malkoskie*, *supra*, 188 Cal.App.4th at p. 974-976.)

" 'Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt . . . [citation], *which includes good record title* [citation], but is not limited to good record title, as between the parties to the transaction. . . . The court in an unlawful detainer [action] . . . has jurisdiction to determine the validity of such defenses.' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 479.) However, an unlawful detainer action does not permit the defendant "to litigate every possible issue related to [the plaintiff's] claim of ownership. 'Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly

12

raised in this summary proceeding for possession, nor are they concluded by the judgment.' " (*Id*. at p. 483.)

Because they involve an examination of title, section 1161a title determinations may bar "subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale." (*Vella*, *supra*, 20 Cal.3d at p. 256.) But they may not bar other suits challenging activities not directly connected with the conduct of the sale. (See *Gonzalez v. Gem Props., Inc.* (1974) 37 Cal.App.3d 1029, 1035-1037.)

## C.      *Compulsory Cross-Claim*

For the first time on appeal, Taptelis contends that Homeward was required to pursue its unlawful detainer claim as a cross-claim in the wrongful foreclosure action and that, by failing to do so, Homeward lost standing to pursue the claim and the trial court lost jurisdiction to adjudicate it. Exercising our discretion to address a question of law on undisputed facts (see *People v. Runyan* (2012) 54 Cal.4th 849, 859, fn. 3), we reject Taptelis's argument on the merits.

"Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." (§ 426.30, subd. (a).) But "[t]his article applies only to civil actions and does not apply to special proceedings." (§ 426.60, subd. (a).)[7] Unlawful detainer proceedings are special proceedings. (See *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 824 (*Tide Water*); § 1161a [found in part 3 of the code, which addresses "special proceedings" of a civil nature]; *Shapell*, *supra*, 85 Cal.App.5th at p. 215.)

---

[7] "Article 2. Compulsory Cross-Complaints" comprises sections 426.10 through 426.80.

Acknowledging that he has been unable to identify any case in which a party contended that an unlawful detainer claim must be brought as a compulsory cross-claim in a related wrongful foreclosure action, Taptelis asserts that the statutory exception inures only to the benefit of an unlawful detainer defendant, and only to the detriment of a plaintiff seeking possession: in his reading, an unlawful detainer defendant need not, and cannot, file cross-claims in an unlawful detainer action but a potential unlawful detainer plaintiff must file its unlawful detainer claim as a cross-claim in a related wrongful foreclosure action. This argument does not comport with the plain language of the statute. We note as well that requiring prospective unlawful detainer plaintiffs to bring their claims as compulsory cross-claims in civil actions would frustrate the clear legislative purpose of a summary proceeding to obtain possession. (See *Tide Water*, *supra*, 43 Cal.2d at pp. 824.)

Even if section 426.30 could apply to require an unlawful detainer claim to be brought as a cross-claim, by its terms it applies only to claims against the plaintiff that have accrued by the time the defendant serves its answer. Homeward answered the wrongful foreclosure complaint on December 15, 2020.[8] Homeward served the notice to quit later, in March 2021. Homeward had no statutory right to file an unlawful detainer claim against Taptelis, if at all, until he "h[eld] over and continue[d] . . . possession of" the property "after a three-day notice to quit the property ha[d] been served upon" him. (§ 1161a, subd. (b); see also *Dr. Leevil*, *supra*, 6 Cal.5th at p. 482 [notice to quit, as first step in the removal process, was premature and void where it was served before the trustee's deed was recorded to perfect title].) Under Taptelis's construction of the statute, Homeward would have lost its right to pursue a separate unlawful detainer special proceeding by operation of section 426.30 by not serving its notice to quit at least three

---

[8] We grant Taptelis's unopposed request for judicial notice of the date on which Homeward filed its answer in the wrongful foreclosure case. (See Evid. Code, § 452, subds. (d), (h).)

14

days before its deadline to answer Taptelis's wrongful foreclosure case. Even where it applies, section 426.30 does not require a party to file a claim prematurely.

## D.    *"Duly Perfected" Title*

The parties dispute whether anything beyond recordation of the trustee's deed was necessary for Homeward to "duly perfect[]" title under the sale (§ 1161a, subd. (b)(3)), clearing the way for the service of the notice to quit. In Taptelis's view, Homeward needed to at least expunge each lis pendens he had noticed (or else resolve the wrongful foreclosure litigation altogether) to duly perfect title. The trial court effectively rejected this view,[9] precluding Taptelis from introducing evidence of the lis pendens or the pending wrongful foreclosure litigation.

The admission or exclusion of evidence on relevance grounds is typically subject to the trial court's broad discretion. (See *People v. Waidla* (2000) 22 Cal.4th 690, 717-718 [abuse of discretion standard applies where admissibility turns on the relevance of the evidence in question]; *People v. Navarro* (2021) 12 Cal.5th 285, 327.) But "[a]n order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.) Addressing the legal conclusion underpinning the trial court's evidentiary ruling, we hold that the trial court abused its discretion by excluding evidence of the lis pendens, in that it was both relevant and sufficient to defeat Homeward's unlawful detainer claim. Homeward needed to either expunge the lis pendens or resolve the underlying wrongful

---

[9] Although the trial court initially appeared to grant Homeward's motion in limine to exclude only evidence of the violations of Homeowner's Bill of Rights alleged in the wrongful foreclosure action, the court during trial sustained Homeward's objection to evidence of the wrongful foreclosure complaint and lis pendens themselves, based on the in limine ruling. We understand the trial court's omission from its written decision of Taptelis's argument that Homeward had not "duly perfected" title as an implicit conclusion that recordation of the Trustee's Deed duly perfected Homeward's title.

15

foreclosure suit to perfect title. Because it did neither, its notice to quit was premature and void.

Under *Dr. Leevil*, "the new owner must perfect title before serving the three-day written notice to quit." (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 477; see also *id*. at pp. 479-480, 482-484.) A notice to quit served before the condition is satisfied is "premature and void." (*Id*. at p. 482.)

To duly perfect title under a foreclosure sale, the prospective unlawful detainer plaintiff must take all steps to make the title perfect, "i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt." (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 479.) The Supreme Court contemplated that its ruling "requiring a new owner to perfect title *before* serving its three-day notice would avoid the imposition of possibly unnecessary relocation expenses on the possessor of the property" because it would require the resolution of a "cloud on the new owner's title concern[ing] an issue that cannot be litigated in an unlawful detainer action" before the three-day notice can be served. (*Id.* at p. 484.)[10] In so doing, *Dr. Leevil* treated a cloud on title that cannot be litigated in an unlawful detainer action as an impediment to the perfection of title, one that must be cleared before the purchaser may serve a notice to quit and commence an unlawful detainer proceeding. (See also *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 649 [discussing "perfect title"].) It was immaterial that Dr. Leevil had indisputably perfected its title through recordation before filing the unlawful detainer proceeding; Dr. Leevil's failure to do so before serving the notice to quit was fatal to its unlawful detainer proceeding. (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 479-481.)

_____

[10] It is implicitly necessary to *Dr. Leevil*'s rationale that the cloud on title relate to the unlawful detainer defendant's right to possess the property. Here, there is no dispute that Taptelis's lis pendens related to a lawsuit by which Taptelis sought to retain both title and the right to possess the property.

As Homeward has acknowledged, Taptelis's lis pendens clouded title. (See *Integrated Lender*, *supra*, 22 Cal.App.5th at p. 877.) Because the lis pendens was recorded prior to the foreclosure sale (a sale in fact conducted for Homeward's benefit), Homeward was on notice of that cloud on title before it nominally purchased the property from Quality, the trustee Homeward had selected.

We apply the reasoning of *Dr. Leevil* as follows. Taptelis's lis pendens clouded title. Insofar as the propriety of Taptelis's lis pendens could not be litigated in the unlawful detainer action itself,[11] Homeward was required to, at its option, either expunge the lis pendens or resolve the wrongful foreclosure litigation before it could serve the notice to quit necessary to initiate an unlawful detainer action. (See *Integrated Lender*, *supra*, 22 Cal.App.5th at p. 877 [lis pendens clouds title until expungement of the notice or resolution of the underlying litigation].) It is undisputed that Homeward did not resolve Taptelis's lis pendens through either avenue at any time prior to entry of judgment in this unlawful detainer action. Accordingly, in contravention of *Dr. Leevil*, Homeward prosecuted and prevailed on its unlawful detainer action while Taptelis's lis pendens continued to cloud Homeward's title.

We acknowledge two practical differences between this case and *Dr. Leevil*. First, Homeward's omission here is not of a routine step to be undertaken in every nonjudicial foreclosure, but one necessitated by Taptelis's filing of a preemptive wrongful foreclosure complaint and recordation of a lis pendens. Second, expungement of a lis pendens is more onerous than recording a trustee's deed, the step that was missing in *Dr. Leevil*. (See §§ 405.30-405.32, 405.35.)

---

[11] To the extent *Dr. Leevil* may suggest a distinction between title concerns that can be litigated in an unlawful detainer action and title concerns that cannot, there was no dispute in this case that Taptelis's wrongful foreclosure case turned on substantive issues that were beyond the scope of an unlawful detainer proceeding. (See *Dr. Leevil*, *supra*, 6 Cal.5th at p. 484.)

17

But we must apply the statute before us, as our Supreme Court has now interpreted it. The plain terms of section 1161a, subdivision (b)(3) require the new owner to perfect title before serving the notice to quit. (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 477, 479-480, 482-484.) Without enumerating every step necessary to perfect title, *Dr. Leevil* explained that title is duly perfected when all steps have been taken to make it perfect—" 'to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt . . . .' " (*Id*. at p. 479, quoting *Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, 841, citing *Hocking*, *supra*, 37 Cal.2d at p. 649.) *Dr. Leevil* further explained that the unlawful detainer statutes—due to the summary nature of the proceedings—must be strictly construed: " '[I]t is essential that a party seeking the remedy bring [it]self clearly within the statute.' " (*Id*. at p. 480.) Moreover, in addressing the practical implications of its holding, the *Dr. Leevil* court acknowledged that a "cloud" on title is an imperfection in title. (*Id*. at p. 484.) It follows from the dictates of *Dr. Leevil* that the failure to expunge the lis pendens, which Homeward agrees clouded title, before serving the notice to quit constituted a failure to perfect title under section 1161a, subdivision (b)(3).

We acknowledge as well the potential for abusive recordation of lis pendens—that is, the filing of preemptive challenges to nonjudicial foreclosures followed by the recordation of lis pendens as a means to delay an inevitable, and lawful, post-foreclosure eviction. (See, generally, *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 741-744 [holding that certain quiet title theories constituted improper preemptive challenge to nonjudicial foreclosure]; *Perez v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2020) 959 F.3d 334, 338-340 [discussing California law regarding preemptive challenges to nonjudicial foreclosures]; but see *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 295 [some violations of the HBOR give rise to claim for preforeclosure injunctive relief].) But the Legislature has put in place guardrails to deter potential abuse. (See generally *Shoker*, *supra*, 81 Cal.App.5th at pp. 280-282 [noting

18

1992 amendments to § 405 et seq.].)  The statutory scheme puts the recording party to the burden of substantiating the probable validity of the real property claim, rather than burdening the party moving for expungement.  (§§ 405.30-405.32, 405.35.)  Independent of a motion to expunge, the court may require a claimant who has recorded a lis pendens to furnish an undertaking to a person claiming an interest in the property.  (§ 405.34.)  And the grant or denial of an expungement order is subject to expedited writ review.  (§ 405.39.)  The statute provides for prevailing party fees on a motion to expunge, absent "substantial justification or . . . other circumstances mak[ing] the imposition of attorney's fees and costs unjust."  (§ 405.38.)  While the prospect of a fee recovery may seem dim as against a party already facing a foreclosure, the prospect of fee liability may nonetheless serve a deterrent purpose.

Homeward has not identified any authority precluding our application of *Dr. Leevil* to the present case.  The sole argument Homeward raised in its briefing sought to distinguish between "duly perfected" title and "perfect title," without mention of *Dr. Leevil*.  But *Dr. Leevil* held that the requirement that "title under the foreclosure has been duly perfected" (§ 1161a, subd. (b)(2)) means "the new owner must perfect title" (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 477).

We note that the Supreme Court has held "that where the purchaser at a trustee's sale proceeds under section 1161a . . . he must prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by statute, that title may be litigated in such a proceeding." (*Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 159 (*Cheney*).)  "[T]he plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by a purchase at such sale, and the defendant may raise objections only on that phase of the issue of title." (*Id*. at p. 160.)  Building on the foundation laid by *Cheney*, the Supreme Court held that the res judicata effect of an unlawful detainer judgment is limited, as to subsequent title challenges, by its narrow purview.  (*Vella*, *supra*, 20 Cal.3d at pp. 255-258; see also *Struiksma v. Ocwen Loan Servicing, LLC*

19

(2021) 66 Cal.App.5th 546, 554-557 [discussing *Cheney* and *Vella*].) But in *Dr. Leevil*, the high court identified these same limitations on the scope of an unlawful detainer action as a basis for requiring removal of a cloud on title prior to service of a notice to quit. (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 483-484.)

To the extent the high court's discussion in *Dr. Leevil* of the practical ramifications of its holding—including the benefits of adopting a rule requiring a new owner to perfect title before serving the notice to quit—may be characterized as dictum, "[a]s an intermediate appellate court, we do not lightly disregard dictum from our Supreme Court. ' "Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive. [Citation.]" ' [Citation.] 'When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed.' " (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 330.) Moreover, our decision hinges on the proper construction of section 1161a, subdivision (b)(3), an issue that the Supreme Court squarely addressed in *Dr. Leevil* but had no occasion to address in *Cheney*. (Compare *Dr. Leevil*, *supra*, 6 Cal.5th at pp. 478-481, with *Cheney*, *supra*, 9 Cal.2d at pp. 159-161.)

Cases predating *Dr. Leevil* support the proposition that recording the trustee's deed entitles the purchaser to commence unlawful detainer proceedings against the borrower. (See *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268, 275; see also *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 480.) But these cases did not have occasion to address the question raised by Taptelis—whether recording of the trustee's deed is sufficient to duly perfect title in favor of one who is *not* a bona fide purchaser for value without notice and who is therefore not entitled to the conclusive presumption of Civil Code section 2924, subdivision (c), because the property is subject to a lis pendens at the time of the foreclosure sale that the purchaser has not had expunged.

In addition, following *Dr. Leevil*'s recent construction of section 1161a, we find earlier appellate decisions less persuasive. (See *Abrahamer v. Parks* (1956) 141

Cal.App.2d 82, 83-84 [applying *Cheney* to hold that unlawful detainer plaintiff was required only to prove acquisition of title by purchase at a trustee's sale, rejecting defendants' attempts to litigate the effect of a lis pendens filed in another action in the unlawful detainer proceeding]; *Kartheiser v. Superior Court* (1959) 174 Cal.App.2d 617, 620-621 [recognizing general rule that title cannot be tried in a summary unlawful detainer proceeding, but ruling that where the validity of the trustee's sale is attacked section 1161a requires proof that the property was duly sold in accordance with statute and that the title under the sale had been duly perfected]; but see *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 370-371, 395 [holding that trial court "abused its discretion in refusing [unlawful detainer defendant's] request to consolidate . . . unlawful detainer and quiet title actions for trial" with the effect of resolving a "complex" title dispute through a summary unlawful detainer proceeding, and remanding "for determination of the parties' rights to legal and beneficial title to the property, and their respective rights to possession based on that determination"].)

Pending further guidance from the Supreme Court, we interpret *Dr. Leevil* to provide that Taptelis was entitled to assert as a defense that his unexpunged lis pendens was a cloud on title under the foreclosure sale. Where the lis pendens raised an issue of title that could not be adjudicated in an unlawful detainer proceeding, as the parties agree is the case here, Homeward could not serve the notice to quit or maintain an unlawful detainer action until the lis pendens, or the underlying litigation, had been resolved.[12] The trial court therefore erred in precluding Taptelis from raising the lis pendens to rebut Homeward's claim of duly perfected title. Because the excluded evidence would have

---

[12] If Taptelis's lis pendens was facially deficient, as Homeward implicitly suggests by arguing that the wrongful foreclosure claims could not impact title to or right to possession of the property, that means that the burden of resolving the lis pendens before serving the notice to quit would be limited.

established that Homeward was not (yet) entitled to the remedy it obtained, the error was prejudicial.

## E.    *Remand*

The legal error identified above independently dictates reversal.  Accordingly, we do not reach Taptelis's arguments regarding the trial court's failure to stay the action or the taking of judicial notice or the inferences therefrom as they relate to the sufficiency of Homeward's evidentiary showing at trial.  Nor do we address Taptelis's arguments concerning the trial court's implicit denial of his request for a stay of judgment, a remedy he already sought from this Court through separate writ proceedings.  (See § 1176, subd. (a).)  Given the complexities in this case—the sale of the property to a third party during the pendency of the appeal and the pendency of underlying wrongful foreclosure litigation—we will remand the matter to the trial court pursuant to section 908 to determine whether and to what extent restitution and/or a money judgment may be appropriate.  We express no opinion as to whether consolidation may be appropriate on remand.

## III.    DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.  Costs on appeal are awarded to Taptelis.

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
GROVER, J.

*Homeward Opportunities Fund I Trust 2019-2 v. Taptelis*
H049791

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 21CV378676 |
| Trial Judge: | The Honorable Erik S. Johnson |
| Attorneys for Defendant and Appellant<br>Ilias Louis Taptelis: | Law Offices of Ronald H. Freshman<br><br>Ronald H. Freshman |
| Attorneys for Plaintiff and Respondent<br>Homeward Opportunities Fund I Trust<br>2019-2: | The Ryan Firm<br><br>Timothy M. Ryan<br>Michael W. Stoltzman, Jr. |

*Homeward Opportunities Fund I Trust 2019-2 v. Taptelis*
H049791